IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| PAUL WATTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:18-cv-04076-MDH |
| | ) | |
| STATE OF MISSOURI | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is the Missouri Department of Corrections' Motion for Summary Judgment. (Doc. 78). The motion is ripe for review and for the reasons stated herein, the Court grants the motion.

## BACKGROUND

Plaintiff is currently employed with the Missouri Department of Corrections ("DOC") as a classification case manager. Plaintiff has been a classification case manager since October 2017 and his current take home salary is between $40,000 and $41,000 a year.

Anne Precythe is currently, and has been since January 2017, the Director of DOC. Julie Kempker is currently, and has been since August 2019, Director of Probation and Parole at DOC. As Director of Probation and Parole, Kempker oversees all the operations of the DOC probation and parole offices and its employees. Prior to August 2019, Kempker's title was Chief State Supervisor of Probation and Parole. As Chief State Supervisor, Kempker's duties were basically the same as they are currently as the Director. Up until May 2018, Michelle Kasak was one of eight institutional regional administrators in probation and parole. As a regional administrator,

1

Kasak's duties included management of probation and parole employees at various prisons throughout Missouri. Kempker was Kasak's supervisor while she was a regional administrator in probation and parole.

Kenny Jones was the Chairman of the Board of Probation and Parole in 2017. He was appointed by the Missouri governor and could only be removed by the governor. As Chairman, Jones was responsible, along with other members of the Board, for making parole decisions regarding inmates confined by DOC. Jones also had authority to make hiring decisions in probation and parole. Kempker testified she made administrative decisions regarding hiring in probation and parole – Plaintiff disputes this and contends Jones, as Chairman of the Parole Board, was the hiring authority. Shannon Kimsey is, and was at all relevant times for purposes of Watt's claims, the district administrator for District 24 of the DOC.

Watts was formerly employed with DOC as a probation and parole officer up until 2016. Prior to returning to DOC, Watts worked for the Missouri Department of Labor ("Labor Department") for six months in 2016. Watts was on probation at the Labor Department and was never offered a permanent position with that agency. While at the Labor Department, Watts filed one or more complaints regarding his employment with the Labor Department. After his probationary period ended he was not retained as a permanent employee with the Labor Department. Watts then reapplied for employment with DOC.

In approximately October 2016, Watts requested to be considered for rehire status with the DOC division of probation and parole. Rehire status means a former employee with DOC does not go through the same process as a new hire. Rehire status is discretionary and not automatically granted to all former employees that apply. After Watts requested rehire status he met with Shannon Kimsey, his previous supervisor, on approximately January 18, 2017. After meeting with

2

Watts, Kimsey sent Kempker a memo in which she recommended that Watts not be hired with probation and parole.

In the memo to Kempker, Kimsey stated she had learned of information not previously known before Watts left DOC employment that revealed he was a negative presence while working in probation and parole. Kimsey's recommendation included two attachments regarding inappropriate statements made by Watts to a coworker when he previously left DOC. Kimsey further stated that, in her meeting with him, Watts had indicated he had made some complaints regarding comments allegedly made by his Labor Department supervisor relating to gays and transgenders. No additional information regarding these complaints was revealed by Watts during the meeting with Kimsey. Kempker was not aware of any additional specifics regarding the complaints made by Watts when he was employed by the Labor Department.

After receiving Kimsey's memo, Kempker denied Watts' request for rehire status but did inform Watts he could still go through the regular hire process for new employees. Watts was hired as a corrections officer after going through the regular hiring process in February 2017.

Watts then applied for, and was granted an interview for, probation and parole in April 2017. After receiving the interview for the probation and parole position, the committee conducting the interview recommended Watts for the position. Kempker was not aware that Watts had been granted an interview for the probation and parole position in April 2017. Jones did not interview Watts for the probation and parole position in April 2017. The committees conducting probation and parole interviews are not authorized to make employment offers to any applicant. Brad Burger was on the committee that recommended Watts and called Watts and told him he was selected for the probation and parole position. This call occurred on or about May 5, 2017. Watts told Burger immediately that he accepted the position. Watts expected this would be confirmed

3

in writing. Watts then resigned his position as a corrections officer after receiving the call from Burger. Watts does not recall whether he ever received anything in writing confirming he was selected for the probation and parole position in April 2017. There is no DOC record that Watts ever received a written notice of his selection for the probation and parole position in April 2017. Watts also received a congratulatory text message from Jones on May 15, 2017.

After learning of the committee's recommendation of Watts for the probation and parole position, Kempker spoke with Director Precythe. Precythe agreed with Kempker's decision that Watts should not be given the probation and parole position and not be considered for any other position in probation and parole unless and until his behavior described in Kimsey's prior memo changed. Precythe then spoke with Jones, the Chairman of Probation and Parole, and indicated that Watts could not be brought back to probation and parole at that time because of his behavior documented in Kimsey's memo. Precythe did not indicate that Watts could never return to probation and parole.

On or about May 17, 2017, Jones then asked Watts to rescind his acceptance of the probation and parole position. Watts never notified anyone that he was rescinding his acceptance of the probation and parole position. Kempker instructed Kasak to send Watts a formal letter a couple of days later rescinding any offer that may have been made to him. Watts was allowed to rescind his resignation as a corrections officer and remained in that position. Watts subsequently applied for, and was hired as, a classification case manager.

Watts has never spoken with Anne Precythe. Watts has never spoken with Kempker and Kempker has had no input in determining whether Watts should be selected to fill any other positions in probation and parole. The probation and parole position would have been a pay raise

4

of $811.00 per month. Further, Watts retirement could have been effected by being reduced based on his three highest years and Probation and Parole would have been his highest years.

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011). In addition, "while employment discrimination cases are often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment." *Shirrell v. Saint Francis Med. Ctr.*, 24 F. Supp. 3d 851, 855–56 (E.D.Mo. 2014); citing

5

*Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010); citing *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir.1999). In fact, there is no separate summary judgment standard for employment discrimination cases, and "it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Id.*

## DISCUSSION

**Count I – Title VII – Retaliation**

Plaintiff alleges he was retaliated against by Defendant for his participation in reporting alleged wrongdoing at his previous employer the Labor Department. To establish a prima facie case of retaliation, Plaintiff must establish: (1) he engaged in protected conduct, (2) he suffered a materially adverse employment act, and (3) the adverse act was causally linked to the protected conduct. *Bunch v. Univ. of Arkansas Bd. of Trustees*, 863 F.3d 1062, 1069 (8th Cir. 2017) (internal citation omitted). Plaintiff must either present direct evidence of retaliation or rely on circumstantial evidence and employ the burden shifting analysis in *McDonnell Douglas*. See *Kempf v. Hennepin Cty.,* 987 F.3d 1192, 1196 (8th Cir. 2021), citing *McDonnell Douglas v. Green,* 411 U.S. 792 (1973). If Plaintiff is able to establish a prima facie case under *McDonnell Douglas* then the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *Id.* Plaintiff must then show that the reason articulated by Defendant was really a pretext for discrimination. *Id.* To succeed, Plaintiff must both discredit Defendant's explanation for their decision and that the circumstances permit drawing a reasonable inference that the real reason for their decision was retaliation. *Id.*

Here, Watts alleges he was not given the probation and parole position in April 2017 when he applied. Watts argues that he was not hired for a probation and parole position based on his prior complaints at his previous employer. However, Watts was hired as a corrections officer with

6

Case 2:18-cv-04076-MDH   Document 87   Filed 09/07/21   Page 6 of 9

the DOC, even if it was known he had made prior complaints at the Labor Department. As a result, Watts' claims of retaliation by Defendant based on his previous complaints at the Labor Department fall short when he was in fact hired by Defendant, just in a different position than he originally sought. Watts argues "Director Precythe indicated to Kenney Jones that Watts could not be brought back as a probation officer to the Division of Probation and Parole, but could be hired as a Correctional Officer and work inside an institution." Watts fails to provide any evidence that Defendant would not hire him, nor that his complaints at the Labor Department had anything to do with Defendant's decision to hire him in a different position.

Watts argues Burger made him an offer of employment in probation and parole but the offer was rescinded. Defendant argues Burger never had authority to make the offer. However, regardless of the validity of the offer for that position, Watts cannot establish retaliation when he was in fact hired by Defendant. Watts simply cannot establish he suffered an adverse employment action when he was hired by, and continues to work for, the Defendant.

Defendant has set forth that Watts was not desirable to be hired in probation and parole because of his prior offending statements to a coworker. There is no evidence it was based on Watts prior reports at the Labor Department. Watts prior supervisor had recommended he not be rehired in that department based on his prior conduct when working there. Further, even if there is evidence Defendant had knowledge of Watts complaints at the Labor Department he was hired as a corrections officer and then later was selected as a classification case manager when he later applied for that position.

The Court finds Plaintiff has failed to show he suffered a materially adverse employment act. Further, even if the recission of the probation and parole offer of employment was an adverse employment act, which this Court does not find, there is still no evidence that any such act was

7

causally linked to the alleged protected conduct. Defendant hired Plaintiff regardless of the complaints he had made at his prior employer. As a result, the Court finds Plaintiff's claim cannot survive summary judgment.

**Count II – Wrongful Discharge – Pendant State Claim**

Count II of Plaintiff's Amended Complaint alleges a "wrongful discharge – pendant state claim." Plaintiff is an at-will employee with the DOC and continues to work there.

A wrongful discharge claim is analyzed in Missouri as follows: "In the absence of an employment contract with a definitive statement of duration of employment, an employment at will is created." *Frevert v. Ford Motor Co.*, 614 F.3d 466, 470–71 (8th Cir. 2010). An at-will employee may be terminated for any reason or for no reason. *Id.* (internal citations omitted). An at-will employee who has been discharged has no cause of action for wrongful discharge as a matter of law. *Id.* However, "Missouri recognizes the public-policy exception to the at-will-employment rule." *Id.*

The public policy exception, otherwise known as the wrongful discharge doctrine, is very narrowly drawn. *Id.*

> Where an employer has discharged an at-will employee because that employee refused to violate the law or any well established and clear mandate of public policy as expressed in the constitution, statutes and regulations promulgated pursuant to statute, or because the employee reported to his superiors or to public authorities serious misconduct that constitutes violations of the law and of such well established and clearly mandated public policy, the employee has a cause of action in tort for damages for wrongful discharge.

*Id.* "[A] wrongful discharge action must be based on a constitutional provision, a statute, a regulation based on a statute or a rule promulgated by a governmental body." *Id.* When a plaintiff claims that he was wrongfully discharged for "reporting violations of law or public policy to his superiors, commonly referred to as 'whistleblowing,'" the plaintiff "must show that he reported to

8

Case 2:18-cv-04076-MDH   Document 87   Filed 09/07/21   Page 8 of 9

superiors or to public authorities serious misconduct that constitutes a violation of the law and of well established and clearly mandated public policy." *Id.* (internal quotations, alteration, and citation omitted).

Here, Plaintiff has not been discharged. Plaintiff is still employed with the DOC as a classification case manager. Defendant argues because Plaintiff was hired by DOC, and is still employed by DOC, he cannot establish a claim for wrongful discharge. This Court agrees. Here, Plaintiff has not been discharged, or even disciplined, and as a result his claim for wrongful discharge fails.

## CONCLUSION

Wherefore, for the reasons stated herein, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Date:   September 7, 2021                             /s/ Douglas Harpool
                                                      **DOUGLAS HARPOOL**
                                                      **UNITED STATES DISTRICT JUDGE**